UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MATTHEW STONE,

        Plaintiff,

v.                              Case No:  2:15-cv-253-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Matthew Stone seeks judicial review of the denial of his claims for a period of Social Security disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.    For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED.**

### I.    Issues on Appeal[1]

Plaintiff raises four issues on appeal:    (1) whether substantial evidence supports the finding of Administrative Law Judge, Donna Lefebvre (the "ALJ" or "law judge") that Plaintiff's impairments do not meet or equal Listing 1.04; (2) whether substantial evidence supports the weight the ALJ accorded to the medical opinions of

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

record; (3) whether substantial evidence supports the ALJ's step five determination; and (4) whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence.   Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

## II.   Procedural History and Summary of the ALJ's Decision

Plaintiff was forty-five (45) years old at the time of the ALJ decision.   Tr. 23, 34.   He graduated high school with a special education certificate and previously worked as a dishwasher and food service aide.   Tr. 34, 43, 50.   Plaintiff applied for disability and DIB on April 27, 2012, alleging he became disabled and unable to work on November 16, 2010 (the "alleged onset date" or "AOD") because of cervical spine injuries, nerve damage and psoriasis.   Tr. 31, 86, 221.   His applications were denied initially and upon reconsideration.   Tr. 105-09, 111-16.   Plaintiff's insured status for disability benefits expired on December 31, 2012 (the "date last insured").   Tr. 189.   Accordingly, Plaintiff must establish disability on or before that date and after the AOD.   See 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

At his request, Plaintiff received a *de novo* administrative hearing on July 15, 2013 before ALJ Lefebvre, during which he was represented by counsel.   Tr. 29-56. Plaintiff and a vocational expert ("VE") testified at the hearing.   *Id.*   On September 17, 2013, the ALJ issued a decision finding that Plaintiff is not disabled and denying his claim.   Tr. 12-23.   At step two, the law judge found that Plaintiff had severe

impairments of degenerative disc disease of the cervical and lumbar spine; asthma; and an organic mental disorder.   Tr. 15.   At step three, she concluded that, through the date last insured Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."   Tr. 15.   The ALJ concluded that, with his severe impairments, Plaintiff had the RFC to perform light work[2] with the following limitations: standing/walking up to 6 hours per day; sitting up to 6 hours per day; occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extreme heat or cold or pulmonary irritants; and no concentrated exposure to moving and hazardous machinery or unprotected heights Tr. 17.   The ALJ further found that Plaintiff was limited to simple, routine, and repetitive tasks with infrequent changes in job duties.   *Id.*   Relying on the VE's testimony, the ALJ found that Plaintiff is capable of performing work in representative occupations such as decal applicator, housekeeper and laundry hand folder, and thus held he was not disabled from the AOD to the date last insured.   Tr.

---

[2] Under the Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."   20 C.F.R. § 404.1567(b).

21-23. The Appeals Council let stand the decision of the ALJ as the final decision of the Commissioner. Tr. 1-4. Plaintiff filed an appeal in this Court on April 22, 2015. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 9, 11.

### III.  Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.; Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th

Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."   *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence

and to assess the credibility of the witnesses.   *Lacina v. Commissioner,* 606 F. App'x

520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### A.   *Whether substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or equal Listing 1.04(A)*

Plaintiff first argues that substantial evidence does not support the ALJ's

finding at step three that Plaintiff does not meet or equal Listing 1.04(A).[3]   Doc. 13

at 4-6.   He further states that the ALJ's decision is "devoid of the legally requisite

discussion" of this issue.   *Id.*   The Court disagrees on both propositions, and finds

that substantial evidence supports the ALJ's decision.

As noted above, at step three of the five-step sequential evaluation process, the

Commissioner considers whether a claimant suffers from a medical condition that

meets or equals a "listed impairment," or "listing."   See 20 C.F.R. §

404.1520(a)(4)(iii), (d).   The listings describe impairments that the Commissioner

considers severe enough to prevent a person from doing "any gainful activity,

regardless of his or her age, education, or work experience."   *See* 20 C.F.R. §

404.1625(a).   If an adult's impairment "meets or equals one of the listed

impairments, the claimant is conclusively presumed to be disabled. . . ."   *Sullivan v.*

*Zebley*, 493 U.S. 521, 532 (1990) (citing *Bowen,* 482 U.S. at 141).   The Eleventh

Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed
> condition that is included in the listings and (2) provide objective
> medical reports documenting that this condition meets the specific

---

[3] Plaintiff does not contend that he meets any other subsection of Listing 1.04 or any other listing.   See Doc. 13 at 4-6.

criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987).

It is undisputed that Plaintiff has the burden of establishing his impairment meets or equals a listing. *Carpenter v. Comm'r*, 614 F. App'x 482, 487 (11th Cir. 2015) ("Indeed, at this step of the disability inquiry, the burden of proof remains squarely on [plaintiff], and the Commissioner's findings as to whether he carried that burden are conclusive and must be affirmed if supported by substantial evidence, even if those findings are not supported by a preponderance of the evidence in the record") (citations omitted); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Plaintiff must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4); *Wilkinson*, 847 F.2d at 662. In doing so, Plaintiff must have a diagnosed condition that is included in the listings. *Id.* Diagnosis of a listed impairment, however, is not enough; as the claimant also must provide objective medical reports documenting that his impairment meets the specific criteria of the applicable listing. *Id.; accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

The listing that is at issue in this case, Listing 1.04(A), provides:

Disorders of the spine (e.g., . . . degenerative disc disease . . . ), resulting compromise of a nerve root (including the cauda equine) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).   The ALJ here specifically considered whether Plaintiff's impairments met or equaled the listings, specifically addressing Listing 1.04, and she found that they do not.   Tr. 15.   Although Plaintiff has a disorder of the spine – degenerative disc disease – as discussed by the ALJ, the evidence of record did not show Plaintiff's spinal disorder was accompanied by nerve root compression or other criteria of Listing 1.04(A).   *Id.*   The ALJ stated that she reviewed the record and found "the claimant had no impairments that met or medically equaled the criteria of any section of Appendix 1."   *Id.*   With respect to Listing 1.04(A), she held "[s]pecifically, there is no evidence of nerve root compression with limitation of motion of the spine *accompanied by* motor and sensory or reflex loss; spinal arachnoiditis; or lumbar spinal stenosis resulting in the inability to ambulate effectively as is required by listing 1.04 (Disorders of the spine)."   *Id.* (emphasis added).   The medical evidence in the record supports the ALJ's decision, and the ALJ discussed these records in her decision.   *See, e.g.,* Tr. 18-19.   Plaintiff has failed to meet his burden that he meets *all* the criteria of Listing 1.04, as he is required to do.   *Sullivan*, 493 U.S. at 530.

For example, the ALJ discussed treatment notes dated August 17, 2010 from Plaintiff's neurologist, Thomas Morell, M.D.   Tr. 18, 280-81.   Dr. Morrell first treated Plaintiff in 2007 after a neck injury from a motor vehicle accident.   Tr. 18,

280, 288-89.   Dr. Morrell noted that an earlier MRI had revealed "multiple levels of cervical spondylosis and disc protrusion."   Tr. 280.   The physician further noted, however, that Plaintiff did not require surgery.   *Id.*   Dr. Morrell's physical examination revealed that Plaintiff had 5/5 hand grip strength in his right hand, slight atrophy of the right forearm muscles, and his coordination and gait were within normal limits.   *Id.*   Dr. Morrell found that Plaintiff had ongoing symptoms of chronic neck injury with posttraumatic spondylosis, foraminal narrowing and right cervical radiculitis.   *Id.*   Dr. Morrell did not note, however, any nerve root or spinal cord limitations.   *See* Tr. 280-81.

Other records during the relevant time period from the onset of disability to Plaintiff's date last insured (November 16, 2010 through December 31, 2012), likewise fail to show Plaintiff consistently experienced neuro-anatomic distribution of pain, motor loss, or sensory and reflex loss.   Although, as noted by the Commissioner, Plaintiff showed decreased strength in a November 16, 2010 examination (Tr. 323), his reflexes, muscle strength and tone, and sensation were normal in examinations in June, August and October 2012.   *See* Tr. 308-11, 331, 333, 337.

Further, the Court does not find persuasive Plaintiff's argument that the ALJ's decision concerning whether Plaintiff meets or equals a listing is lacking in the requisite analysis.   Doc. 13 at 14-15.   At step-three of the ALJ's analysis, "[w]hile Appendix 1 must be considered in making a disability determination, [the ALJ] is not required [to] mechanically recite the evidence leading to [her] determination.

*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).   Thus, an ALJ's finding that a claimant does not meet a particular listing may be implicit in the ALJ's decision.   *Id.*   Here, the Court finds the ALJ sufficiently explained her reasoning in her opinion, which was supported by the record.   The Court therefore concludes the ALJ's decision that Plaintiff's impairments do not meet or equal a listing is supported by substantial evidence.

> B.   *Whether substantial evidence supports the ALJ's evaluation of the weight accorded medical opinions of record*

Plaintiff appears to contend the ALJ erred by according significant weight to an August 20, 2012 opinion of nonexamining state agency consultant Dr. Thomas Peele while according little weight to two opinions [4] of treating neurologist Dr. Morrell.   Doc. 13 at 18, Tr. 20.   The first was in a disability insurance form dated April 20, 2012, in which Dr. Morell opined that Plaintiff was unable to perform any physical or mental work activity.   Tr. 292-93.   The second was a note in a treatment record from July 16, 2013 in which Dr. Morell opined that that Plaintiff is "disabled and non-employable."   Tr. 353.   The Commissioner responds that the ALJ here articulated her reasons, supported by substantial evidence, for giving little weight to Dr. Morrell's opinions; and Dr. Peele's opinion was consistent with the record

---

[4] It is not entirely clear in Plaintiff's brief which opinion or opinions of Dr. Morell that he is challenging the weight accorded by the ALJ, as he appears only to be addressing the opinion in the April 20, 2012 treatment record.   See Doc. 13 at 18 (referring to "Dr. Morell's opinion," and citing to that portion of the record at Tr. 292-93).   Although Plaintiff did not address Dr. Morell's opinion on the disability insurance form, the ALJ also gave this opinion little weight.   Tr. 20.   Thus, the Court also will address this opinion.

evidence.   Doc. 14 at 8, 10.   The Court finds substantial evidence in the record as a whole supports the ALJ's decision as to the weight given to these opinions.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p; *Crawford*, 363 F.3d at 1159-60.

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight.  SSR 96-2p; 20 C.F.R. § 404.1527(c).  By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so.  *Winschel*, 631 F.3d at 1179.  Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as he demonstrates good cause to reject the opinion.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The portion of the record from the relevant time period[5] contains medical records from Dr. Morrell beginning on August 17, 2010, three years after his initial visits in 2007 because of an auto injury.  Tr. 280-93, 348-54.  He presented for ongoing neck pain with some radiation toward his right arm and weakness in the arm.  Tr. 280.  Dr. Morell reported that although Plaintiff appeared very disheveled and unkempt, he was very pleasant and cooperative with the interview and exam, and he was cognitively intact.  *Id.*  He opined "there is no evidence of any psychosis or any mental disturbance, at least from my perspective today."  *Id.*  Plaintiff had a

---

[5] From his AOD of November 16, 2010 through his date last insured on December 31, 2012.

5/5 hand grasp strength in his right hand, and some very slight atrophy of his right forearm muscles, and his coordination and gait were within normal limits. *Id.* Dr. Morell noted Plaintiff had loss of range of motion both "spontaneously during interview and exam as well as active movement on full cervical extension and lateral rotation." *Id.* He recommended a new and updated MRI of Plaintiff's cervical spine and additional medical intervention that might include medication management, physical therapy, steroid injections or possible surgical referral if there was "severe neurological compromise." *Id.* Dr. Morell assisted Plaintiff with disability paperwork, opining that Plaintiff "really would not be able to do any physical activity at this point or for the long term future," as such activity "would only contribute to his neck getting worse." *Id.*

Although the record does not contain a treatment record for that date, on April 20, 2012, Dr. Morell completed a Disability Status Update form for Plaintiff's disability insurance company. Tr. 292-93. Dr. Morell stated in the form that Plaintiff suffered from traumatic brain injury, lumbar spondylosis and cervical radiculopathy and as a result could not perform any physical or mental work activity. *Id.*

Plaintiff's next visit to Dr. Morell was on July 16, 2013. Tr. 349-54. Dr. Morell noted Plaintiff had last been seen in April 2012, and Plaintiff had not been hospitalized or had surgery since then. Tr. 349. During the visit, Dr. Morell noted Plaintiff was awake, alert and oriented, and was well-developed and well-nourished. *Id.* He was pleasant and cooperative. *Id.* Plaintiff moved all four extremities

independently and "with purpose," without the use of an assistive device, but he exhibited a slow, antalgic gait pattern.   *Id.*   He responded to questions asked of him with simple answers, but sometimes found it difficult to explain in detail.   *Id.*   Dr. Morell opined Plaintiff's mental processing time was slow and his affect was dull. *Id.*   Plaintiff stated his low back pain was a 10/10 on a scale of 1 to 10, but it was not radiating.   Tr. 350.   Although he was able to report his pain was constant, Plaintiff could not identify his pain range.   *Id.*   Plaintiff reported his pain was throbbing and burning, particularly in his upper extremities.   *Id.*   He also reported tingling.   *Id.* Plaintiff had been taking Aleve for pain control.   *Id.*   Plaintiff's mobility and gait was within normal limits as was his upper extremity exam.   He showed moderate bilateral tenderness in his cervical and lumbar spine.   *Id.*   Plaintiff's bilateral muscle strength and tone were normal in both his upper and lower extremities, his sensation was intact, and his reflexes were normal.   *Id.*   His coordination, gait, heel to shin, heel to toe walking, straight line walking and rapid alternating movements all were within normal limits.   Tr. 352-53.   Nonetheless, Dr. Morell concluded:

> Plaintiff has chronic Traumatic Brain Injury. He has ongoing symptoms of mechanical and musculoskeletal Pain.   He also may have psychiatric illness.   It is my professional neurologic opinion that his man is disabled and non-employable.

Tr. 353.

The ALJ gave little weight to these opinions of Dr. Morell.   Tr. 20.   As to the opinion on the insurance form, the ALJ noted:

> The undersigned gives little weight to this conclusive statement to the insurance company because it is inconsistent with the claimant's treatment history, including many of Dr. Morell's own clinical findings.

*Id.* (citing Tr. 328-47). As to the 2013 treatment note, the ALJ likewise gave this conclusion little weight "because it is also inconsistent with the claimant's treatment history before and after his date last insured. Moreover, according to Social Security Ruling (SSR) 96-5p, the ultimate issue of disability is a matter reserved to the Commissioner of the Social Security Administration." *Id.*

The Court finds the ALJ's articulated reasons for giving little weight to Dr. Morell's opinion are supported by substantial evidence. As discussed above, Dr. Morell's own treatment records over the several years of his treatment of Plaintiff in which Plaintiff routinely exhibited normal gait, normal coordination and normal strength were inconsistent with a finding of total disability. *See, e.g.,* Tr. 280, 308-11, 331, 333, 337. The ALJ properly afforded Dr. Morell's opinions little weight as Dr. Morell's opinions were conclusory, unsupported by his own treatment records, and inconsistent with Plaintiff's other medical records. Furthermore, the ALJ articulated her reasons for her findings. *Winschel*, 631 F.3d at 1179. As noted by the Commissioner, Dr. Morell's opinion of total disability also is undermined by Plaintiff's reported daily activities. Doc. 14 at 9, citing *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005). Plaintiff drives, goes to church, cares for his own needs, performs some household chores, builds model houses and interacts with family members. Tr. 21.

Furthermore, as properly pointed out by the ALJ, opinions on whether a claimant is disabled are reserved to the Commissioner. Tr. 20 (citing SSR 96-5p); *see Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (noting "[t]he regulation

in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence"); 20 C.F.R. § 404.1527(d)(1). Such an opinion by a medical source does not mean that the Commissioner will determine that a claimant is disabled and, accordingly, the ALJ need not afford such opinion any special significance.   20 C.F.R. § 404.1527(d)(1) & (3).   As such, the ALJ here was not required to afford any particular weight to Dr. Morell's opinion that Plaintiff was disabled.

Plaintiff erroneously asserts that the ALJ ignored Plaintiff's testimony that he was unable to afford medical treatment.   Doc. 13 at 18.   On the contrary, the ALJ discussed Plaintiff's allegation that he is unable to obtain necessary treatment because he lacks medical insurance.   Tr. 20.   She noted:

> [T]he record is absent of attempts to obtain additional medical care from a charitable or state-funded source. The evidence also indicates the claimant has obtained some medical treatment from a walk-in clinic.

*Id.*   The Eleventh Circuit repeatedly has held that a claimant's inability to afford treatment excuses noncompliance with recommended courses.   In *Dawkins v. Bowen*, the court explained that when the claimant cannot afford the prescribed treatment, and there is no other way to obtain it, the claimant is excused from noncompliance.   848 F.2d 1211, 1213 (11th Cir. 1988).   An may not rely primarily if not exclusively on evidence of noncompliance with unaffordable prescribed treatment to make an adverse credibility determination.   Here, however, the ALJ noted Plaintiff's impairments were controlled with the use of medications, and the record

revealed that Plaintiff did not seek treatment with any neurologist for over two years after his August 2010 visit to Dr. Morell despite records revealing that Plaintiff had sought treatment from a walk-in clinic.   Tr. 18, 20.   The ALJ also noted that Plaintiff did not require additional medical treatment for musculoskeletal pain from any medical treatment provided after the May 2013 office visit to Dr. Morell, and he testified that we was only taking an over-the-counter anti-inflammatory – Aleve – for his back and neck pain only one or twice per week.   Tr. 19.   Thus, noncompliance was not a basis, let alone the sole basis for any adverse credibility finding[6] (Tr. 18) nor for the reduced weight given to the opinions of Dr. Morell.

Plaintiff also questions the great weight given to state agency consultant Thomas Peele, M.D., who viewed Plaintiff's medical history and assessed his physical limitations.   Doc. 13 at 20; Tr. 94-95.   Dr. Peele performed an RFC assessment and opined that Plaintiff could perform a full range of light work, noting he can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, stand and/or walk about 6 hours in an 8-hour workday, and push and/or pull and lift or carry without limitation.   Tr. 94.   Dr. Peele discussed a consultative examination on June 28, 2012 performed by internist Pascal Bordy, M.D. (Tr. 307-315), in which Plaintiff was in no apparent distress; his head, ear, eye, nose and throat, neck, cardiac, lungs, abdomen and vascular systems all were within normal limits; he had no musculoskeletal issues; and Plaintiff's motor strength and sensation was intact.   Tr. 95.   Further, Plaintiff was able to squat all the way, could

---

[6] Moreover, Plaintiff does not challenge the ALJ's credibility finding.

walk on his heels and toes bilaterally, could perform a tandem gait and was neurologically intact.  *Id.*  Dr. Paine noted Plaintiff had some pain with range of movement in his cervical and lumbar spine, but opined "he should be able to work at [or] above RFC."  *Id.*

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.  SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).  Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.  20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

The ALJ discussed Dr. Peele's opinion, that Plaintiff can perform a full range of light work.  Tr. 20, 94-95.  The ALJ gave Dr. Peele's assessment great weight "because it is consistent with the claimant's treatment history."  *Id.*  The ALJ did not adopt the entirety of Dr. Peele's assessment, however, further opining, "the weight of the evidence suggests additional postural and environmental limitations that were not opined by Dr. Peele."  *Id.*  The Court also finds substantial evidence supports the great weight given to the opinion of Dr. Peele, and that, with the added postural and environmental limitations set by the ALJ, it was consistent with the

medical evidence of record.   According, the Court affirms the ALJ on this issue.

C.   *Whether substantial evidence supports the ALJ's step five determination*

Plaintiff next asserts that the VE's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"), because two of the jobs that the ALJ found Plaintiff to be capable of performing require a reasoning level higher than that allowed by the ALJ's RFC finding.   Doc. 13 at 20.   Plaintiff argues that the representative jobs that the VE testified Plaintiff could perform – decal applicator, housekeeper and laundry hand folder – have higher reasoning or SVP[7] levels under the DOT than the RFC.   Doc. 13 at 20-21.   The Commissioner responds that the ALJ's hypothetical question to the VE included all of Plaintiff's credible functional limitations and therefore was complete, the VE's testimony confirmed that the hypothetical individual could perform the representative jobs, and thus substantial evidence supports the ALJ's step five determination.   Doc. 14 at 10-12.

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given his RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 2001); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).   When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that

_____

[7] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2."   SSR 00–4p, 2000 WL 1898704 at *3.

significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE.   *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559; 20 C.F.R. § 404.1566.   A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations.   190 F.3d at 1229.   If there is a conflict between the DOT and jobs identified by a VE in response to the hypothetical question, the testimony of the VE "trumps" the DOT because "the DOT is not the sole source of admissible information concerning jobs."   *Id.* at 1230.

In this case, the ALJ found that Plaintiff had the RFC to perform light work, but limited him to "perform simple, routine and repetitive tasks in work with infrequent changes in job duties."   Tr. 17.   Because of these limitations, the ALJ questioned the VE by way of a hypothetical whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC. Tr. 50-54.   In the hypothetical posed to the VE, likewise the ALJ included the above limitations.   Tr. 51-53.   The ALJ also asked the VE whether his testimony was consistent with the DOT, and he responded that it was.   Tr. 54.

Plaintiff argues that the jobs that the VE testified Plaintiff could perform – decal applicator, housekeeper and laundry hand folder – have higher reasoning or SVP levels under the DOT.   Doc. 13 at 20-21.   Plaintiff contends that under the DOT, an individual with Plaintiff's RFC, who can perform only simple, repetitive and routine work, cannot perform the jobs identified, because under the DOT each of the jobs identified by the VE has a reasoning level or "GED" of 2.   Doc. 13 at 21. Plaintiff argues that jobs with reasoning levels higher than 1 are "precluded from

simple work because a reasoning level of 2 or higher assumes the person is capable of more than simple or repetitive tasks."   Doc. 13 at 21.

The Court does not find Plaintiff's argument to be persuasive.   As an initial matter, the ALJ asked the VE if there were any inconsistencies between his opinion and the DOT, and the VE responded that there were not.   Tr. 54.   The Court's analysis could end right there.   *See Jones*, 190 F.3d at 1230.   Plaintiff did not offer any evidence controverting the VE's opinion, nor did he object to the opinion.   *See* Tr. 54-55.[8]   Even assuming there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that Plaintiff was not disabled.   *See Jones*, 190 F.3d at 1229-30 (testimony of a VE trumps the DOT where there is an inconsistency).   Moreover, as explained by the Commissioner, the DOT does not equate GED levels with the mental demands of the job, and even if they were related, courts in this circuit have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks.   Doc. 14 at 12-14, citing *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (citation omitted); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, at *8

---

[8] On cross-examination, counsel for Plaintiff only expanded on the limitations in the hypotheticals the ALJ had given to the VE by questioning whether an individual could perform the jobs identified by the VE or Plaintiff's past relevant work if, in addition to the limitations posed by the ALJ, (1) there was only "occasional extension, flexion, or rotation of the neck" or (2) if the individual had a moderate (11-25% of the workday) limitation in either concentration, persistence or pace; understanding and memory, social functioning or adaptation.   Tr. 54.   The VE responded that there were no jobs given either of these limitations.   Tr. 54-55.   The Court further addresses the second hypothetical in the discussion in the next section below.

(N.D. Fla. Mar. 20, 2014)).   The Commissioner further points out SSR 00-4p provides that unskilled work corresponds to an SVP of 1 or 2 in the DOT.   *See* SSR 00-4.   All three of the jobs that the VE identified Plaintiff could perform have an SVP of 2. Because there was no apparent inconsistency between the VE's opinion and the DOT, the ALJ's decision is supported by substantial evidence in this regard.

> D.   *Whether the ALJ's RFC finding is supported by substantial evidence*

Plaintiff's final argument is that the ALJ failed to include non-exertional limitations in the RFC, namely Plaintiff's limitations in maintaining concentration, persistence and pace and social functioning.   Doc. 13 at 22.   Specifically, Plaintiff asserts that both agency consultants, Dr. Morell and Dr. Visser, each noted problems with social interactions; and state agency consultant, Dr. Silver and Dr. Harris, each noted that Plaintiff would have "difficulties with co-workers and peers and with completing a normal work day or work week without interruption from psychologically based symptoms or performing at a consistent pace without [an] unreasonable number and length of rest periods."   *Id.*   The Commissioner responds that the ALJ properly accounted for moderate concentration limitations by limiting Plaintiff to simple, repetitive and routine work, which is supported by the medical evidence.   Doc. 14 at 13 (citing *Winschel*, 631 F.3d at 1180-81; *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013); and *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013)).   With respect to social functioning limitations, the Commissioner asserts that based on the mental RFC opinions, no additional mental RFC limitations were warranted.   Doc. 14 at 14-15.   Having

reviewed the record and controlling authority, the Court finds substantial evidence supports the RFC assessment of the ALJ.

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

In considering the severity of Plaintiff's mental impairments at step two of the sequential evaluation process, the ALJ considered the four broad functional areas set out in the regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[9] Tr. 15. She held, in pertinent part, that Plaintiff had only mild difficulties in social functioning and moderate difficulties in concentration, persistence and pace. Tr. 16. With respect to Plaintiff's social functioning, the ALJ discussed Plaintiff's testimony that he goes to Sunday school on a weekly basis and regularly interacts with family members. *Id.*

---

[9] 20 C.F.R., Part 404, Subpart P. Appendix 1.

As to his concentration, the ALJ discussed Plaintiff's testimony that he plays games on the computer, builds model houses and occasionally watches television.   *Id.*   She also discussed Plaintiff's testimony that he was in special education courses throughout his school years and graduated with a special diploma.   She discussed June 2012 psychological examination in which Plaintiff reported that he was capable of managing his own medications but needs a list to organize the day.   *Id.*   She concluded that it appears Plaintiff has "some limitation in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.*   Thus she assessed "moderate" limitations in this area.   *Id.*

The ALJ further considered the 2012 consultative reviews of state agency psychologists Wendy Silver, Psy.D., and Alan Harris, Ph.D., and found that their opinions generally supported the levels of mental functioning found by the ALJ.   Tr. 16.   Dr. Silver found, among other things, Plaintiff had moderate difficulties in both social functioning and maintaining concentration, persistence and pace.   Tr. 16, 79. Dr. Harris found similar results.   Tr. 16, 92.   The ALJ gave great weight to the opinions of Dr. Silver and Dr. Harris because they were consistent with Plaintiff's limited mental health treatment history and reports of his activities of daily living. Tr. 16.   She noted that evidence received at the hearing level "suggests the claimant is no more than mildly impaired in his ability to interact with others."   *Id.*

As noted, the ALJ limited Plaintiff's RFC to performing "simple, routine and repetitive tasks in work with infrequent changes in job duties."   Tr. 17.   These

limitations, included in the ALJ's hypothetical question, adequately accounted for Plaintiff's moderate limitations in social functioning and in concentration, persistence, and pace and are supported by the medical evidence. Notably, both non-examining, consulting psychologists, Dr. Silver and Dr. Harris, concluded that despite moderate limitations in these two areas, Plaintiff could: (1) carry out very short and simple instructions, (2) perform activities within a schedule, maintain regular attendance and be punctual, (3) sustain an ordinary routine without special supervision and work in coordination with or proximity to others without being distracted by them, (4) make simple work-related decisions, and (5) interact appropriately with the general public, and maintain socially appropriate behavior. Tr. 81-83, 95-97. Dr. Silver further noted that while there "is some decrease in concentration, [Plaintiff] can attend to and complete simple tasks in a routine setting as needed." Tr. 82. With respect to Plaintiff's social limitations, Dr. Silver stated that although Plaintiff "tends to isolate [himself] there is no evidence of impaired social skills." *Id.*

Plaintiff also relies on the opinions of Dr. Morell and Dr. Visser to support his argument that the ALJ should have included additional limitations in her RFC finding. Doc. 13 at 22. The Court finds Plaintiff's argument to be without merit. As noted above, the ALJ gave no weight to Dr. Morell's conclusory opinion that Plaintiff cannot perform any physical or mental work activity or that he could not interact or perform in the work place, and the Court already has found that substantial evidence supports this finding. Tr. 20, 293. In discussing the opinion

of psychological consultative examiner Kenneth A. Visser, Ph.D., the ALJ noted that his opinion was "somewhat vague and not defined in clear vocational terms."   Tr. 20. Dr. Visser opined that Plaintiff has some limitation in travel, understanding/memory, ability to adapt and understanding/following instructions.   *Id.*; *see* Tr. 299-305. The ALJ gave this opinion "some weight" because it is consistent with the Plaintiff's limited mental health treatment, special education history and reports of his activities of daily living.   Tr. 20.   The Court finds substantial evidence supports the ALJ's decision.

Finally, Plaintiff argues that the ALJ further erred by not relying on the VE's testimony in response to Plaintiff's addition to the hypotheticals on cross-examination that there would be no jobs for an individual who would be off task 11 to 25% of the work day in addition to regularly scheduled breaks.   Doc. 13 at 24; *see* Tr. 54-55.   The Court finds this argument to be without merit.   The additional hypothetical was posed by Plaintiff's counsel, and he defined "moderate limitations" as 11 to 25%.   Tr. 54.   Although given these facts, it may be the opinion of the VE that there would be no available jobs, there simply is no medical evidence in the record to support this proposed limitation,[10] as discussed herein.   Thus, the ALJ was not obliged to rely on this testimony.

As in the cases cited by the Commissioner, the Court similarly finds here that the medical evidence demonstrates that the ALJ's restriction to routine and repetitive

---

[10] Or, for that matter, that Plaintiff would be off-task more than 15% of the workday, in which the VE testified such an individual would not be able to work.   Tr. 54.

tasks with minimal changes to job duties sufficiently accounts for Plaintiff's limitations in social functioning and concentration, persistence and pace. *See, e.g., Winschel,* 631 F.3d at 1180-81; *Timmons,* 522 F. App'x at 907-08; *Jacobs,* 520 F. App'x at 950-51.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 21st day of August, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record